UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| THE SUNDANCE GROUP, INC., | 5:24-CV-04124-CBK |
| Plaintiff, | |
| vs. | |
| CITY OF SIOUX FALLS, Minnehaha County, South Dakota; PAUL J. TENHAKEN, Mayor of the City of Sioux Falls; AARON J. FAGERNESS, Principal Engineer for the City of Sioux Falls; and KURT A. PEPPEL, Assistant Engineer for the City of Sioux Falls, | ORDER |
| Defendants. | |

An "increasingly popular response to the affordable housing crisis, is [local governments' exercise of its police powers] to levy exactions on developers of residential projects as conditions for zoning changes, or to require plan approval for building permits."[1] This creative public policy response to a complex societal challenge—despite its virtue—may implicate the Fifth Amendment's Taking Clause, which guards against potential abuse in the permitting process. This Court is called upon to address an alleged abuse of a local government's police power in its permitting process.

The Sundance Group, Inc. ("plaintiff"), is a real estate developer incorporated under the laws of the State of South Dakota and has its principal place of business in Sioux Falls. Plaintiff sought a zoning permit for its development projects in the City of Sioux Falls, which was denied. Plaintiff filed suit against the defendants—City of Sioux Falls, its Mayor, and the Principal and Assistant Engineers for the City. Plaintiff alleges pursuant to 42 U.S.C. § 1983 that the defendants (1) violated plaintiff's Procedural Due-

---

[1] Michelle DaRosa, When Are Affordable Housing Exactions an Unconstitutional Taking?, 43 Willamette L. Rev. 453, 454 (2007).

Process Right granted by the Fourteenth Amendment of the federal Constitution; and (2) violated plaintiff's rights under the federal Constitution's Fifth Amendment Takings Clause. Plaintiff requests that this Court exercise supplemental jurisdiction over its state law claims and alleges that defendants (3) tortiously interfered with plaintiff's business relationship or expectancy under South Dakota state law; (4) breached a settlement agreement; and (5) breached a contract. Plaintiff seeks injunctive relief mandating defendants to issue Permanent Certificates of Occupancy as well as recover actual and consequential damages

The City *et. al.* ("defendants"), filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants also argue that plaintiff failed to: (1) exhaust state and local law remedies; and (2) establish a protected interest in the Certificates of Occupancy. Defendants request that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## BACKGROUND

Plaintiff and the City entered into a series of agreements from 2020 through 2021, for plaintiff to construct low-income housing. Plaintiff claims that the most relevant of these agreements concerned the development of property located at 2100 East Walnut Street, Sioux Falls. The City agreed to provide plaintiff with $238,000.00 in Public Development Block Grants (PDBGs), to assist plaintiff with the costs of acquiring the property and constructing the necessary improvements for the development and marketing of twenty twin homes on the property. Plaintiff in return agreed not to exceed a set maximum sale price for each home.

Plaintiff and the City later agreed to a series of amendments to the original agreement after various disputes arose in the Summer of 2021. The amendments modified the number of homes that plaintiff was permitted to build and increased the maximum sale price per unit. The parties failed to resolve their disputes but entered a Settlement Agreement, with plaintiff agreeing to and returning the funds it received from

2

the City. The City in turn agreed to plaintiff selling the twin homes it had built "without restrictions." The term "without restrictions" was not defined.

Plaintiff alleges that the City, however, placed engineering holds on the building permits less than a month after executing the Settlement Agreement and that the hold effectively suspended inspections of the project and issuance of occupancy permits for the units. According to the plaintiff, the City then demanded that plaintiff construct additional public improvements to include streetlights and sidewalks. Plaintiff claims the conditions were not based on any building codes, were not reflected in plans previously approved by the City, and in many cases conflicted with the City's prior directives. Plaintiff alleges that the City even failed to release the holds after plaintiff complied with the City's directives.

Plaintiff claims that the City imposed new and onerous requirements on plaintiff. For example, plaintiff asserts that the City's Revised Street Lighting Plan demanded that plaintiff replace street lighting on property that was not owned by plaintiff or covered in any previous agreement. The City also required plaintiff to install a new sidewalk on property that was not owned by plaintiff, commission a new flow analysis, submit revised Development Engineering Plans ("DEPs"), and obtain a $170,783 bond to cover additional public improvements.

Plaintiff further alleges that, in July 2021, Matt Tobias, the City's Development Services Manager, told a local publication that the City planned to pivot from partnering with private developers on the City's public housing initiative, and that the City would directly purchase land to develop affordable housing projects using public funds. Plaintiff also alleges that accessible housing was a fundamental component of TenHaken's 2026 Housing Action Plan, which was essential to Mayor TenHaken's 2022 reelection campaign. Plaintiff also claims that Mayor TenHaken used retaliation against plaintiff for attempting to terminate the Settlement Agreement. Plaintiff believes that, as of May 2021, the City had not yet contributed to the $1 million fund, which was first proposed in 2019 to help neighborhoods become or remain affordable.

3

Furthermore, plaintiff alleges that, as part of the retaliation, Mayor TenHaken directed city officials to prevent plaintiff from selling the units and to force plaintiff to construct various public improvements without compensation. Plaintiff also alleges that Mayor TenHaken's administration hoped to force plaintiff into default with plaintiff's lenders—an event that would allow the City to purchase the Project and reincorporate the Project into its affordable housing program to bolster the mayor's reelection campaign.

## DECISION

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion, the court may consider the complaint, materials that are part of the public record, and materials necessarily embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . ." Id. at 555. In addition, the factual contents of the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Courts "are [however] not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). When assessing the merits of a complaint challenged under Rule 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.

### I. Failure to State a Claim.

Defendants claim plaintiff has failed to state a claim warranting federal jurisdiction under 42 U.S.C. § 1983. District Courts have jurisdiction to hear "civil

actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Merely identifying a federal issue is not enough to confer federal jurisdiction; the right being enforced must arise from federal law. Cagle v. NHC Healthcare-Maryland Heights, LLC, 78 F.4th 1061, 1066 (8th Cir. 2023). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

### A. Claims Under 42 U.S.C. § 1983 Generally.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution or laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that each defendant acted under the color of state law and that the defendant violated a right secured by the federal Constitution or a federal statute. West v. Atkins, 487 U.S. 42 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir. 1999).

"If a plaintiff's complaint is silent about the capacity in which [the plaintiff] is suing the defendant, we interpret the complaint as including only official-capacity claims." Baker v. Chisom, 501 F.3d 920, 923-24 (8th Cir. 2007) (*quoting* Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir.1995)). Plaintiff did not allege the capacity in which defendants are sued and, therefore, this Court interprets the claims as official capacity claims only. "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." Kentucky v. Graham, 473 U.S. 159, 165 (1985). Plaintiff's complaint is ultimately against the City of Sioux Falls.

In cases where the defendant is a city, the plaintiff must plausibly allege that "a policy or custom [of the city] caused the alleged [constitutional] violation." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006); *See* Rogers v. City of Little Rock, 152 F.3d 790, 800 (8th Cir.1998). "[L]ocal governments [pursuant to 42 U.S.C. § 1983] may be sued for constitutional deprivations visited pursuant to governmental 'custom' even

5

though such a custom has not received formal approval through the body's official decision-making channels." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

Plaintiff's § 1983 claim alleges that defendants deprived plaintiff of private property without due process and without just compensation. Plaintiff alleges that defendants acted under the color of law when defendants placed holds or conditions on the issuance of Certificates of Occupancy to further the City's policy of promoting affordable housing. Although plaintiff alleges that the City was acing to further its policy of providing affordable housing, plaintiff has not alleged that the City has a policy or custom to reach that goal by its employees and officials acting in the wrongful manner alleged in the complaint.

### B. Procedural Due-Process Claim.

Plaintiff alleges that the defendants violated plaintiff's procedural due process right when defendants refused to issue plaintiff Certificates of Occupancy and placed holds on the issuance of such certificates for properties owned by plaintiff. The Fourteenth Amendment, in relevant part, provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The standard analysis under the Fourteenth Amendment provision, requires that this Court determine whether plaintiff can establish the existence of a property interest of which the claimant has been deprived. Ellis v. City of Yankton, S.D., 69 F.3d 915, 917 (8th Cir. 1995) (quoting Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 445–446 (8th Cir.1995)); See Swarthout v. Cooke, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).

Without reservation, a procedural due process claim fails if the claimant cannot identify a protected property interest of which the claimant was deprived. Beaulieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012); See Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). "Protected property interests are created by state law." Dover Elevator Co. v. Arkansas State Univ., 64 F.3d at 446. "A state law creates a property

interest in a building permit when . . . the proper applicant has complied with all the applicable laws and codes required for permit issuance." City of Yankton, S.D., 69 F.3d at 917 (*quoting* Carolan v. City of Kansas City, 813 F.2d 178, 181 (8th Cir.1987)). A municipal ordinance is a form of state law that can create a protected property interest when it establishes procedural requirements that impose substantive limitations on the exercise of official discretion. Stauch v. City of Columbia Heights, 212 F.3d 425, 429 (8th Cir. 2000); *See* Austell v. Sprenger, 690 F.3d 929 (8th Cir. 2012).

Plaintiff's due process claim invokes two provisions in the City of Sioux Falls Code of Ordinance—§ 160.727 and § 160.728. The first provision stipulates that: "After final inspection, if it is found that the building, structure, or land complies with the provisions of this chapter and other laws of this jurisdiction, the director shall issue a Certificate of Occupancy." S.F. City Code § 160.727.

The City's ordinance also provides that, "[t]he word 'shall' as used in Chapter 160 of the City of Sioux Falls Code is mandatory and not discretionary." S.F. Code § 160.005(a)(3). The literal reading of § 160.727 and the definition of "shall" suggest that the issuing authority has no discretion to approve or deny a permit. Thus, an applicant has a protected property interest in a Certificate of Occupancy once the applicant has met the requirements of the ordinance's chapter and other laws of the City.

Plaintiff, however, failed to plausibly plead that the City's ordinances and other laws—if any—create a protected property interest in a Certificate of Occupancy. Plaintiff instead asserts that it had a protected property interest in the Units. Plaintiff further failed to clearly allege that it had met the requirements of the ordinance and other laws, which would entitle plaintiff to a Certificate of Occupancy. Plaintiff claims that a settlement agreement between plaintiff and the city created a right to the issuance of the Certificates of Occupancy pursuant to the contract's "without restrictions" clause. Contracts create contract rights, not due process rights.

Plaintiff has failed to allege that it has a protected property interest in the Certificates of Occupancy entitling plaintiff to a federal procedural due process claim.

Consequently, plaintiff failed to state a claim upon which relief can be granted and there is no federal jurisdiction based on plaintiff's 42 U.S.C. § 1983 due process claim.

### C. Substantive Due-Process Claim.

Defendants assert that plaintiff completely failed to allege a substantive due process claim. It is true that plaintiff only used that term twice in the complaint and each time it was in connection with plaintiff's procedural due process claim. The Eighth Circuit has clearly held that a land developer's dispute with a city's planning agency does not rise to the level of a substantive due process claim. Chesterfield Development Corp. v. City of Chesterfield, 963 F. 2d 1102 (8th Cir. 1992).

> [T]he conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate. A federal court, after all, "should not . . . sit as a zoning board of appeals." *Village of Belle Terre v. Boraas*, 416 U.S. 1, 12, 94 S.Ct. 1536, 1542, 39 L.Ed.2d [797] (1974) (Marshall, J., dissenting). Every appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983. As has been often stated, "[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution." *Crocker v. Hakes*, 616 F.2d 237, 239 n. 2 (5th Cir.1980) (*per curiam*).

Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d at 1104 (*quoting* Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1982)).

This Court agrees with the Eighth Circuit that a District Court does not sit as a zoning board of appeals to entertain claims that the City violated its own ordinances under the guise of due process. "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d at 1105. It does not apply to land-use disputes, even to claims that a City enforced an invalid zoning ordinance in bad baith or irrationally. *Id.* It certainly

does not apply to claims that a City breached an alleged contract provision to issue zoning Certificates of Occupancy without further ado (even though the contract does not specifically refer to certificates of occupancy). This Court refuses to entertain a claimed substantive due process violation in a manner that results in this Court acting as a zoning board of appeals.

### D. Regulatory Takings Claim.

Plaintiff alleges that defendants violated the Fifth Amendment of the federal Constitution's Takings Clause when defendants (1) refused to issue Certificates of Occupancy for plaintiff's units and (2) required plaintiff to bear burdens (the cost of construction of public improvements) to secure Certificates of Occupancy.

As in the § 1983 procedural due process claim discussed above, a Takings claim also requires that this Court determine whether plaintiff can plausibly plead the existence of a property interest of which the claimant has been deprived. Hawkeye Commodity Promotions, Inc. v. Vilsack, 486 F.3d 430, 439 (8th Cir. 2007); Arkansas State U., 64 F.3d at 446; See Kansas City, Mo., 813 F.2d at 181. Plaintiff's failure to plausibly allege the existence of a property interest in Certificates of Occupancy — as discussed above — also disposes of plaintiff's takings claim alleging that defendant unjustifiably refused to issue Certificates of Occupancy as to the units.

Plaintiff alleges that defendants forced plaintiff to bear the cost of constructing public improvements, such as drainage improvements, constructing a sidewalk and replacing streetlights, as a prerequisite to obtaining Certificates of Occupancy. It is the failure and refusal to issue such certificates – without having to comply with the City's requirements – that plaintiff claims entitles plaintiff to relief. However, as set forth previously, plaintiff had no federal constitutionally protected right to the issuance of Certificates of Occupancy. The issuance of those certificates is a local matter.

### 2. State Law Claims.

Defendants request that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims. When a district court has original jurisdiction over federal claims, it may exercise supplemental jurisdiction over "all other claims that are so

related to claims in the action." 28 U.S.C. § 1367(a). The district court may decline to exercise supplemental jurisdiction over a state law claim "if the district court has dismissed all claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3).

I have determined that plaintiff has failed to state a claim under 42 U.S.C. § 1983 for violation of due process or for an unconstitutional taking of property without just compensation. Accordingly, I decline to exercise supplemental jurisdiction over any state law claims asserted in this action.

This action is essentially a breach of contract action. The parties entered into an agreement to work together to build housing. The agreement was amended several times and eventually rescinded by virtue of a "settlement agreement." The terms of that agreement were allegedly to restore to plaintiff all property rights in the homes that it had and was developing and to restore to the City money paid to plaintiff to assist in the joint enterprise of constructing affordable housing. What transpired between the parties prior to the entering into the settlement agreement is not before the Court. Plaintiff has failed to state a claim that what transpired after the entry into the settlement agreement resulted in federal constitutional violations. The alleged failure to "timely" issue certificates of occupancy, whether or not done so by City employees or officials for malicious objectives, has not been sufficiently pleaded as a federal claim. Instead, plaintiff has made it clear in the complaint that plaintiff asserts the failure to issue the certificates was done in alleged violation of the parties' settlement agreement. Such matters do not belong in federal court under the facts of this case.

## ORDER

Based upon the foregoing, it is HEREBY ORDERED:

1. Defendants' motion, Doc. 10, to dismiss is granted.

2. Plaintiff's complaint is dismissed without prejudice and without costs.

DATED this *10th* day of January, 2025.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

11